UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KRAFT FOODS GROUP BRANDS LLC,

Petitioner,

- against -

BEGA CHEESE LIMITED,

Respondent.

**PETITION TO COMPEL MEDIATION AND ARBITRATION**

Petitioner Kraft Foods Group Brands LLC ("Kraft"), by its attorneys, Paul, Weiss, Rifkind, Wharton & Garrison LLP, brings this petition to request an order compelling respondent Bega Cheese Limited ("Bega") to participate in mediation and arbitration with Kraft as required by the license agreement between the parties.

**SUMMARY OF KRAFT'S PETITION**

1. This petition seeks to compel Bega to participate in mediation and arbitration, as mandated by the arbitration clause in the parties' license agreement, so that Kraft may halt Bega's blatant violation of Kraft's intellectual property rights and prevent further injury to the world-famous KRAFT brand. Unless and until such relief is granted, Kraft is without any recourse to protect its intellectual property, and Bega will be free to continue undermining the value of Kraft's brand and trade dress as an indicator of trade source in the minds of consumers. Kraft therefore respectfully requests that the Court act on this petition as soon as possible.

2. Kraft and Bega are parties to a license agreement pursuant to which Kraft licenses to Bega (as assignee from the original licensee) the right to use the KRAFT trademark and related trade dress in connection with certain products in certain territories. In direct contravention of the license agreement, Bega is using Kraft's distinctive trade dress separate and apart from the KRAFT trademark, and has indicated that it intends to continue using Kraft's

distinctive trade dress even after the expiration of the Agreement at the end of this year, all in a deliberate effort to trade off the goodwill of the KRAFT brand, cause consumer confusion, and irreparably harm the value of Kraft's intellectual property.

3.      The license agreement contains a broad arbitration clause that requires that all disputes arising out of or relating to the agreement must be resolved by mediation and arbitration in New York, and that all such disputes shall be governed by New York law.

4.      Kraft recently informed Bega that it was initiating the dispute resolution process under the agreement's arbitration clause, with the initial step being to resolve the dispute by mediation and then, if necessary, by binding arbitration in New York.  In response, Bega did not dispute that it was assigned and has assumed the rights of the original licensee, but nonetheless informed Kraft that it believes it is not obligated to comply with the dispute resolution provisions of the license agreement.  Bega's attempt to enjoy the benefits of the license agreement but disavow its obligations thereunder is a flagrant violation of the most fundamental tenet of contract law.

5.      Accordingly, Kraft brings this action, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, to enforce its contractual rights against Bega, and respectfully requests that this Court enter an order as soon as possible (1) declaring that Bega is bound by the terms of the license agreement, including the arbitration clause, and (2) compelling Bega to participate in mediation and arbitration as required by the arbitration clause.  Furthermore, in the event that Bega fails to appear or participate in this proceeding, or fails to comply with an order entered by this Court compelling it to participate in mediation and arbitration, Kraft respectfully requests that the Court enter an order declaring that Bega has repudiated the license agreement and therefore no longer has any rights under it.

## PARTIES

6. Petitioner Kraft Foods Group Brands LLC is a Delaware corporation, with its principal place of business in Pittsburgh, Pennsylvania.

7. Upon information and belief, respondent Bega Cheese Limited is an Australian corporation with its principal place of business in New South Wales, Australia.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this lawsuit pursuant to 28 U.S.C. § 1332(a) because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000, exclusive of interest. Jurisdiction is also proper in this Court pursuant to the FAA, 9 U.S.C. § 4.

9. This Court has personal jurisdiction over respondent Bega because it is a party to a contract that is governed by New York law and that requires all disputes under the Agreement to be arbitrated in New York, New York. *See* C.P.L.R. § 7501; *Glencore Ltd.* v. *Degussa Engineered Carbons L.P.*, 848 F. Supp. 2d 410, 438 (S.D.N.Y. 2012).

10. Venue is proper in this District under the FAA, 9 U.S.C. § 4, and because the Agreement provides that all disputes under the Agreement shall be arbitrated in this District.

## FACTS

11. Kraft is the owner of the world-famous KRAFT trademark. Kraft also is the owner of distinctive trade dress used in connection with certain KRAFT-branded products, which includes peanut butter trade dress comprised of a combination of a jar with a yellow lid and a yellow label with a blue or red peanut device, with the jar having a brown appearance when filled (the "Peanut Butter Trade Dress"). This well-known combination of elements has been used for KRAFT brand peanut butter in Australia since the 1990s, with the red or blue

peanut device added in approximately 2007, and consumers in Australia have long associated the Peanut Butter Trade Dress with the KRAFT brand.

12.     Prior to October 1, 2012, Kraft was a subsidiary of Kraft Foods Inc., a U.S.-based global grocery and snack food company.  On October 1, 2012, Kraft Foods Inc. underwent a corporate restructure whereby (a) Kraft was spun off from Kraft Foods Inc. with its North American grocery business, and (b) Kraft Foods Inc. changed its name to Mondelēz International, Inc. ("Mondelez").  Significantly, as part of that transaction, Kraft acquired all rights in the KRAFT brand name and trademark and all related trade dress used in combination with the KRAFT trademark.

13.     In connection with that transaction, Kraft and Mondelez entered into a Master Ownership and License Agreement Regarding Trademarks and Related Intellectual Property (the "Agreement"), whereby Kraft agreed to license the KRAFT trademark and related trade dress (including the Peanut Butter Trade Dress) to Mondelez for use in connection with certain products (including peanut butter) in certain territories (including Australia).

14.     Under the Agreement, the "Trademarks" licensed to Mondelez (including the KRAFT trademark) are specifically defined as including "all related Trade Dress."  And "Trade Dress" is defined to mean "the rights in the registered or unregistered characteristics of the visual appearance of a product packaging including the shape or appearance of the container, graphic design, and color scheme or design, or a combination of any of the foregoing that serve as a source identifier and are used on the package in combination with a licensed GroceryCo [Kraft] Primary Brand or a licensed SnackCo [Mondelez] Brand, as the case may be."  In other words, Trade Dress under the Agreement means trade dress used in combination with a specific brand name.  Significantly, at the time of the Agreement (and until Bega's recent misconduct),

the Peanut Butter Trade Dress had only ever been used in combination with the KRAFT brand and trademark, which is a GroceryCo [Kraft] Primary Brand under the Agreement. (Hudson Decl. ¶ 4.)

15. Thus, under the Agreement, Kraft licensed to Mondelez both the KRAFT trademark and its related trade dress, including the Peanut Butter Trade Dress. That license is scheduled to expire on December 31, 2017 (the "Expiration Date"), at which time all rights in the KRAFT trademark and the Peanut Butter Trade Dress will revert to Kraft. (Hudson Decl. ¶ 5.)

16. Earlier this year, Bega acquired Mondelez's grocery business in Australia, and was assigned and assumed the rights and obligations of Mondelez under the Agreement with respect to that business, including the right to sell KRAFT-branded peanut butter in Australia using the Peanut Butter Trade Dress. And since acquiring Mondelez's grocery business in Australia, Bega has, in fact, sold KRAFT-branded peanut butter in Australia using the Peanut Butter Trade Dress. Since acquiring that business, Bega also has sold peanut butter in Australia using the Peanut Butter Trade Dress without the KRAFT trademark.

17. Bega's use of the Peanut Butter Trade Dress separately and apart from the KRAFT trademark has a significant detrimental effect on the value of the Peanut Butter Trade Dress as an indicator of trade source, undermines the exclusive association between the Peanut Butter Trade Dress and the KRAFT brand, dilutes the significance of the Peanut Butter Trade Dress as an indicator of trade origin in the minds of consumers, and adversely impacts the ability of Kraft to prevent third party competitors from using similar trade dress. Such conduct therefore breaches Section 3.8(c) of the Agreement, which expressly provides that the licensee (Bega) shall not use the KRAFT trademark and its related trade dress in a manner "that has or

reasonably could be expected to have a material and detrimental effect on the value, reputation or goodwill of such Licensed Trademark."

18.     Bega has taken the position that it is the owner of the Peanut Butter Trade Dress and that, in violation of Kraft's rights, Bega intends to continue to use that trade dress even after the Expiration Date.  Bega's position is without any legitimate basis and Kraft has informed Bega that its assertion of such rights is in direct contravention of the Agreement, which expressly provides that Kraft owns all rights in the licensed trademarks (including the KRAFT mark) and all related trade dress used in connection with those trademarks.

19.     Bega's use of the Peanut Butter Trade Dress after the Expiration Date, and separate and apart from the KRAFT trademark, will have a significant detrimental effect on the value of the Peanut Butter Trade Dress as an indicator of trade source, will undermine the exclusive association between the Peanut Butter Trade Dress and the KRAFT brand, will dilute the significance of the Peanut Butter Trade Dress as an indicator of trade origin in the minds of consumers, and will adversely impact the ability of Kraft to prevent third party competitors from using similar trade dress.

20.     By letter dated September 27, 2017, Kraft formally notified Bega of the foregoing dispute, and further indicated that Kraft was initiating the dispute resolution process pursuant to Article VII of the Agreement, which provides in Section 7.1 that "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof (a 'Dispute'), shall be resolved; (a) first, by negotiation and then by mediation as provided in Section 7.2; and (b) then, if negotiation and mediation fail, by binding arbitration as provided in Section 7.3."  Specifically, Kraft indicated that it proposed to resolve the dispute by mediation, in accordance with Section

7.2 of the Agreement, and if the dispute is not resolved by mediation, to proceed to arbitration as required by Section 7.3 of the Agreement.

21. By letter dated October 5, 2017, Bega indicated that it disagreed with Kraft's position as to the ownership and use of the Peanut Butter Trade Dress, and expressly stated that it was unwilling to participate in mediation or arbitration or otherwise comply with the dispute resolution provisions of the Agreement. At the same time, Bega indicated that it intends to continue to enjoy the benefits of the Agreement.

22. Bega's position leaves Kraft with no recourse but to seek an order from this Court directing Bega to participate in mediation and arbitration as required by the Agreement. To that end, Kraft notes that in Section 7.4 of the Agreement, the parties expressly "acknowledge[d] and agree[d] that a party would suffer irreparable harm from a breach by the other party of this Agreement, and that remedies other than injunctive relief may not fully compensate or adequately protect the non-breaching party for or from such a violation," and that "[t]herefore, at any time during the pendency of a Dispute between the parties, either party has the right to apply to any court of competent jurisdiction for interim relief, including pre-arbitration attachments or injunctions, necessary to preserve the parties' rights or to maintain the parties' relative positions until such time as the arbitration award is rendered or the Dispute is otherwise resolved."

23. Unless and until such relief is granted, Kraft is left without any recourse to protect the value of its intellectual property, and Bega will be free to continue undermining the value of the Peanut Butter Trade Dress as an indicator of trade source and eroding the exclusive association between the Peanut Butter Trade Dress and the KRAFT brand, further diluting the

significance of the Peanut Butter Trade Dress as an indicator of trade origin in the minds of consumers.

**CLAIM FOR RELIEF**

**Order Compelling Mediation and Arbitration**

24. Kraft repeats and re-alleges paragraphs 1 through 23 as set forth above.

25. Bega was assigned and assumed the rights and obligations of Mondelez under the Agreement with respect to Mondelez's grocery business in Australia, including the right to sell KRAFT-branded peanut butter in Australia using the Peanut Butter Trade Dress. As a result, Bega is bound by the arbitration clause in the Agreement, which requires Bega to participate in mediation and arbitration when a dispute arises under the Agreement.

26. A dispute has arisen between Kraft and Bega that is subject to the arbitration clause, and Kraft has formally notified Bega that it has initiated the mediation and arbitration process pursuant to the arbitration clause.

27. Bega has indicated that it will not comply with the arbitration clause in the Agreement, and will not participate in mediation and arbitration as the Agreement requires.

28. Kraft is aggrieved by the refusal of Bega to mediate and arbitrate and will suffer further injury to its valuable intellectual property rights as a result of Bega's failure to comply with its obligations under the Agreement.

29. Kraft therefore is entitled to an order directing Bega to participate in mediation and arbitration in the manner set forth in the Agreement.

30. Accordingly, this Court should enter an order, pursuant to the FAA, 9 U.S.C. § 4, compelling Bega to participate in mediation and arbitration as required under the Agreement.

**PETITION FOR RELIEF**

WHEREFORE, Kraft respectfully requests that this Court:

A. Grant this petition and issue an order (1) declaring that Bega is bound by the terms of the Agreement, including the arbitration clause, and (2) compelling Bega to participate in mediation and arbitration in the manner set forth in the Agreement;

B. In the event that Bega fails to appear or participate in this proceeding, or fails to comply with an order entered by this Court compelling it to participate in mediation and arbitration, enter an order declaring that Bega has repudiated the Agreement and no longer has any rights under it;

C. Award Kraft its attorneys' fees and costs incurred in connection with this Petition to Compel Mediation and Arbitration, as provided in Section 7.6 of the Agreement; and

D. Grant any other relief that this Court deems necessary and proper in the interests of justice.

Dated: New York, New York
October 20, 2017

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: ______________________
Lewis R. Clayton
Darren W. Johnson

1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: 212-373-3000
Fax: 212-757-3990
lclayton@paulweiss.com
djohnson@paulweiss.com

*Attorneys for Petitioner Kraft Foods Group Brands LLC*