UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
KRAFT FOODS GROUP BRANDS LLC,    :

                Petitioner,    :    1:17-cv-8104 (ER)

  -against-    :

BEGA CHEESE LIMITED,    :

                Respondent.    :
-----------------------------------------------------------x

## MEMORANDUM OF RESPONDENT BEGA CHEESE LIMITED IN OPPOSITION TO THE PETITION OF KRAFT FOODS GROUP BRANDS LLC TO COMPEL MEDIATION AND ARBITRATION

DUANE MORRIS LLP
1540 Broadway
New York, NY 10036
(212) 692-1000
Attorneys for Respondent Bega Cheese Limited

TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| Preliminary Statement | 1 |
| FACTUAL BACKGROUND | 2 |
|    A.  Bega's Acquisition of the Mondelez Grocery Business in Australia and New Zealand | 2 |
|    B.  The 3-Step Dispute Resolution Process in the Agreement | 3 |
|    C.  No Dispute Notice Was Sent to Bega Until September 28, 2017, at the Earliest | 4 |
|    D.  Because Mediation Was Not Scheduled in Accordance with § 7.2 of the Agreement Before Kraft Filed Its Petition, Bega Could Not Have Refused, and Did Not Refuse, to Participate in Mediation | 5 |
| ARGUMENT   THE PETITION IS IMPROPER BECAUSE KRAFT IS NOT AN AGGRIEVED PARTY AND BECAUSE THE PETITION IS PREMATURE | 7 |
| CONCLUSION | 14 |

## TABLE OF AUTHORITIES

Cases                                                                                           Page(s)

AES Gener, S.A. v. Compania Carbones del Cesar, S.A.,
    2009 U.S. Dist. LEXIS 70820 (S.D.N.Y. Aug. 12, 2009) ......................................................... 8

Contec Corp. v. Remote Solution Co.,
    398 F.3d 205 (2d Cir. 2005) .................................................................................................... 13

Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    725 F.2d 192 (2d Cir. 1984) .................................................................................................. 7-8

Empresa Generadora de Electricidad ITABO, S.A. v. Corporacion Dominicana de
    Empresas Electricas Estatales,
    2005 U.S. Dist. LEXIS 14712 (S.D.N.Y. July 18, 2005) ............................................... 9, 10-11

Hartford Accident & Indem. Co. v. Equitas Reinsurance Ltd.,
    200 F. Supp. 2d 102 (D. Conn. 2002) ..................................................................................... 10

Howsam v. Dean Witter Reynolds,
    537 U.S. 79, 123 S. Ct. 588 (2002) .......................................................................................... 11

Jacobs v. USA Track & Field,
    374 F.3d 85 (2d Cir. 2004) ........................................................................................................ 7

LAIF X SPRL v. Axtel, S.A. de C.V.,
    390 F.3d 194 (2d Cir. 2004) ...................................................................................................... 8

Maskaev v. World Boxing Council,
    2007 U.S. Dist. LEXIS 72718 (S.D.N.Y. Sept. 24, 2007) ....................................................... 11

Merrill Lynch Inv. Managers v. Optibase, Ltd.,
    337 F.3d 125 (2d Cir. 2003) ...................................................................................................... 6

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,
    460 U.S. 1, 103 S. Ct. 927 (1983) .............................................................................................. 7

N. Am. Tech. Servs. v. RAE Sys. Eur. APS,
    2009 U.S. Dist. LEXIS 120765 (D. Conn. Dec. 29, 2009) ........................................................ 9

Nico Constr. Co. v. Installux Co.,
    1989 U.S. Dist. LEXIS 14247 (S.D.N.Y. Nov. 30, 1989) ................................................... 11-12

PaineWebber, Inc. v. Faragalli,
    61 F.3d 1063 (3d Cir. 1995) ................................................................................................ 8, 12

Pincaro v. Glassdoor, Inc.,
    2017 U.S. Dist. LEXIS 147517 (S.D.N.Y. Sept. 12, 2017) ......................................................12

Profeta v. Shandell, Blitz, Blitz & Ashley, LLP,
    2015 U.S. Dist. LEXIS 154620 (S.D.N.Y. Nov. 16, 2015) ......................................................10

Republic of Ecuador v. Chevron Corp.,
    638 F.3d 384 (2d Cir. 2011) ............................................................................................... 12-13

SH Tankers Ltd. v. Koch Shipping Inc.,
    2012 U.S. Dist. LEXIS 85729 (S.D.N.Y. June 19, 2012) ..................................................... 8-9

Statutes and Other Authorities

AAA Commercial Rules, Rule 7 .............................................................................................................13

Federal Arbitration Act, 9 U.S.C. § 4 ............................................................................................. 2, 7-12, 14

ICDR International Arbitration Rules, Rule 19 ................................................................................ 3-4, 13

UNCITRAL Article 21 ............................................................................................................... 12-13

Preliminary Statement

This memorandum is submitted on behalf of Bega Cheese Limited ("Bega") in opposition to the Petition of Kraft Food Group Brands LLC ("Kraft") to compel Bega to mediate and arbitrate a dispute relating to the packaging of peanut butter that Bega sells in Australia.

Kraft is in the incongruous position of petitioning the Court to require Bega "to participate in mediation and arbitration . . . as required by the license agreement between the parties" without itself having complied with the clear terms of the license agreement that it claims is applicable – the Master Ownership and License Agreement Regarding Trademarks and Related Intellectual Property (the "Agreement"). In its rush to file its Petition, Kraft skipped not one, but two steps in the Agreement's dispute resolution provision. Kraft did not send Bega a Notice of Dispute and then engage in direct discussion and negotiation with Bega, as required by Section 7.2 of the Agreement. Although the Agreement permits a party to seek mediation only if a dispute is not resolved through direct discussion within 45 days of the date of a Notice of Dispute, in Kraft's September 27, 2017 "Dispute Notice," Kraft did not ask Bega to discuss anything and instead stated "we propose that we attempt to resolve the dispute by mediation." Even then, it did not take any steps to initiate mediation until at least November 17, 2017 – after it had already filed its Petition with the Court. By that time, Bega had already agreed to comply with the Agreement's dispute resolution process. (Ex. 1.[1])

When Kraft filed its Petition on October 20, 2017, no mediation had been scheduled. Thus, had Kraft complied with the dispute resolution procedure and been entitled to commence mediation when it filed its Petition – which is not the case – it still would not be an aggrieved

---

[1] Any documents referred to in this memorandum that were not submitted by Kraft in support of its Petition are annexed to the accompanying declaration of Fran M. Jacobs, dated December 8, 2017, the "Jacobs Decl.," and referred to parenthetically as "Ex. [__]."

party within the meaning of Section 4 of the Federal Arbitration Act because Bega had not then failed or refused to participate in a mediation. Bega has since said it will comply with the terms of the dispute resolution provision of the Agreement (Ex. 1) and has agreed to a proposed mediation date. (Ex. 3).

As we explain more fully below, since Bega did not fail or refuse to participate in a mediation and has, in fact, expressed its intention to comply with the Agreement's dispute resolution provisions, Kraft is not aggrieved and lacks standing to maintain this proceeding. The Petition should therefore be denied.

## FACTUAL BACKGROUND

A.  <u>Bega's Acquisition of the Mondelez Grocery Business in Australia and New Zealand</u>

In January 2017, Bega entered into a sale and purchase agreement with Mondelez Global LLC, Mondelez Australia (Foods) Ltd. and Mondelez Australia Pty Limited (together referred to as "Mondelez") under which Bega agreed to buy parts of Mondelez' grocery and cheese business in Australia and New Zealand. The assets covered by the sale and purchase agreement consisted of, among other things, property, machinery, equipment, stock, goodwill, and certain intellectual property rights, including Mondelez' rights under the Agreement to the extent they related to the assets Bega purchased. The sale and purchase agreement closed on July 4, 2017.

Even before the closing occurred, Bega had already begun communicating with Kraft about the spread business it was acquiring from Mondelez. In a letter dated May 2, 2017, Bega referred to its "recent acquisition of Mondelez's grocery business in Australia" and advised Kraft of its plan to "utilize the Kraft brand on peanut butter in a manner consistent with the license agreement and execute a transition of branding." (<u>See</u> Ex. B to Declaration of Sabrina Hudson, dated October 18, 2017, the "Hudson Decl.")

Kraft concedes that it has been aware of Bega's interest in the Mondelez grocery business since at least early May 2017. (Hudson Decl. ¶ 7.)

B.      The 3-Step Dispute Resolution Process in the Agreement

The Agreement was signed by Kraft and Mondelez. Article VII of the Agreement establishes a three-step dispute resolution procedure which is "the exclusive means for resolution of any Dispute." (Hudson Decl. Ex. A § 7.1.)

Step 1 of the dispute resolution process requires that, following service of a "written notice of Dispute," "the parties will first attempt to resolve such Dispute by direct discussion and negotiation." If the direct discussions do not lead to resolution within 45 days, the parties move to Step 2 under which they are to "attempt to settle the dispute by mediation under the current Center for Public Resources/International Trademark Association ('CPR/INTA') Model Procedure of Mediation of Trademark and Unfair Competition Disputes. The Mediator will be selected from the CPR/INTA Panel of neutrals in accordance with its selection process." (Id., § 7.2.)[2]

If the dispute is not resolved within 45 days of the mediation demand, Step 3 of the process applies and either party may demand arbitration. (Id., § 7.3(a).)

Section 7.3(a) further provides that, if arbitration is demanded, "the Dispute shall be resolved by final and binding arbitration administered by the International Centre for Dispute Resolution (the 'ICDR') in accordance with its International Arbitration Rules." (Id.) Under the ICDR International Arbitration Rules, arbitrators are empowered to determine arbitrability. See

---

[2] It appears that CPR and INTA no longer operate a joint mediation program, and each now has a separate panel of mediators.

ICDR International Arbitration Rules, https://www.adr.org/sites/default/files/ICDR%20Rules_0.pdf. Article 19 of the ICDR Rules is entitled "Arbitral Jurisdiction," and it expressly states:

> 1. The arbitral tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement(s), or with respect to whether all of the claims, counterclaims, and setoffs made in the arbitration may be determined in a single arbitration.
>
> 2. The tribunal shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part . . . .

C.  <u>No Dispute Notice Was Sent to Bega Until September 28, 2017, at the Earliest</u>

Kraft sent Bega a letter dated September 27, 2017 with the heading "Dispute Notice regarding Ownership of Trade Dress" (the "Dispute Notice"). (Hudson Decl. Ex. C.) Because of the 14-hour time difference between Eastern Daylight Time and New South Wales Time,[3] it was already September 28, 2017 in Australia when Kraft's Dispute Notice was sent on September 27. The Dispute Notice, which asked Bega to give certain undertakings in writing by October 2, 2017, did not actually reach Bega until October 3, 2017. (See Hudson Decl. Ex. D, p. 1.)

By the time Kraft sent the Dispute Notice in late September, it had known of Bega's acquisition of the Mondelez grocery business since early May – a period of about five months. (See Hudson Aff. Ex. B.) The Dispute Notice nevertheless states that, "[i]n June 2017, [Kraft] gave notice of the dispute to Mondelez in relation to ownership of the Peanut Butter Trade Dress." (Hudson Decl. Ex. C ¶ 15.) Kraft did not include a copy of the notice it claims in its moving papers that it provided to Mondelez. More importantly, Kraft does not purport to have sent a copy of that notice to Bega – even though, when the notice was supposedly sent to

---

[3] The time difference between New York and Queensland, Australia is now 16 hours because New South Wales went onto Daylight Savings Time on October 1, 2027.

Mondelez sometime in June, Kraft had already been communicating with Bega about Bega's plans for branding peanut butter for at least a month. (See Hudson Decl. Ex. B.)

In any event, the notice Kraft allegedly gave Mondelez last June could not have referred to Bega's plans because Kraft states in its Dispute Notice that "[w]e have recently become aware that Bega may be intending to continue using the Peanut Butter Trade Dress after December 31, 2017." (Hudson Decl. Ex. C ¶ 10; emphasis added.)

The Dispute Notice did not invite Bega to discuss and negotiate any peanut butter trade dress issues, and Kraft never attempted to discuss those issues with Bega prior to filing its Petition. Rather, the Dispute Notice states that, because the dispute (which Kraft was bringing to Bega's attention for the first time) "remains unresolved," "we propose that we attempt to resolve the dispute by mediation." (Id., ¶ 16.) While Kraft said "[we] will shortly advise you of our selection [of a mediator]" (Id., ¶ 17), it did not propose any potential mediators until November 17, 2017. (Ex. 2.)

D.  Because Mediation Was Not Scheduled in Accordance with § 7.2 of the Agreement Before Kraft Filed Its Petition, Bega Could Not Have Refused, and Did Not Refuse, to Participate in Mediation

Following Bega's receipt of the Dispute Notice, its Australian counsel sent Kraft a letter dated October 5, 2017 stating:

> We refer to the reference in Your Letter to the dispute resolution process under the Agreement (as defined in Your Letter) and an alleged notice of dispute which you state Kraft Heinz previously gave to Mondelez. As Bega Cheese is not a party to the Agreement, Bega Cheese is not aware of any basis on which it is required to comply with the dispute resolution provisions of that Agreement nor is it aware of any basis as to why it is subject to any alleged notice of dispute which Kraft Heinz may have given to Mondelez.

(Hudson Decl. Ex. D; emphasis added.)

In the Petition, Kraft characterizes this response as "expressly stat[ing] that [Bega] was unwilling to participate in mediation or arbitration or otherwise comply with the dispute

-5-

resolution provisions of the Agreement." (Petition ¶ 21.) No such express statement appears anywhere in Bega's Australian counsel's response. In actuality, Bega's Australian counsel merely questioned (1) whether Bega, as a non-signatory to the Agreement, was bound by its dispute resolution provisions[4] and (2) whether Bega could be subject to an earlier notice of dispute that Kraft had purportedly given to Mondelez.

Kraft neither answered Bega nor initiated the mediation process. Instead, it filed its Petition in this Court seeking to compel mediation and arbitration. Along with the Petition, Kraft filed a memorandum of law citing New York cases holding that an arbitration clause in an agreement is binding on an assignee of the agreement – cases it had not previously brought to the attention of Bega's Australian counsel.

After Bega had an opportunity to obtain advice concerning New York law, it notified Kraft in writing that it "is prepared to comply with the Dispute Resolution Process." (Ex. 1.)

Having gotten what it ostensibly wanted, Kraft is still unwilling to concede that no basis for its Petition exists. In its November 10, 2017 letter to this Court, Kraft complained that Bega was not claiming it was unaware of Kraft's desire to mediate and arbitrate the dispute, and faulted Bega for failing to call up and say what it said in its November 9, 2017 letter. (Docket No. 14, p. 3.) These criticisms are beside the point.

Whether or not Bega knew Kraft wanted to mediate, Kraft had to do more than express a desire to mediate or arbitrate and see what Bega said in response. Before petitioning to compel

---

[4] Bega's Australian counsel's doubt about whether a non-signatory to the Agreement would be bound by its dispute resolution provision was not unreasonable. Bega was never asked to sign the Agreement. Even in this Circuit, the general rule is that "[a]bsent an express agreement to arbitrate," there are "only 'limited theories upon which [a court] is willing to enforce an arbitration agreement against a nonsignatory.'" Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 129 (2d Cir. 2003).

mediation, it actually had to start the mediation process. And Bega thereafter had to refuse to participate. No amount of deflection can change the fact that neither happened: Kraft did not start a mediation before filing its Petition, and Bega did not fail or refuse to participate in the mediation. On the contrary, on November 28, 2017, the parties agreed to a mediator. (Jacobs Decl. ¶ 4.)

Under the circumstances, Kraft cannot claim to be a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration," and it therefore lacks standing to file a petition to compel arbitration pursuant to FAA § 4.

## ARGUMENT

### THE PETITION IS IMPROPER BECAUSE KRAFT IS NOT AN AGGRIEVED PARTY AND BECAUSE THE PETITION IS PREMATURE

Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, authorizes "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." Where a petition to compel arbitration is filed, "the role of courts is limited to determining two issues: i) whether a valid agreement to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate." Jacobs v. USA Track & Field, 374 F.3d 85, 88 (2d Cir. 2004) (internal quotation marks omitted). In this case, Bega has not failed, neglected, or refused to arbitrate. Accordingly, Kraft is not an aggrieved party and it lacks standing to bring a petition to compel mediation and arbitration. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 21, 103 S. Ct. 927, 939 (1983) ("An indispensable element of [a] cause of action under § 4 for an arbitration order is the [other party's] refusal to arbitrate").

The Second Circuit held in Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 725

F.2d 192, 195 (2d Cir. 1984), that, since an order compelling arbitration is "available only to persons 'aggrieved by the . . . refusal of another to arbitrate under a written agreement for arbitration,'" "[u]nless Merrill Lynch commences litigation or is ordered to arbitrate this dispute by the Exchange and fails to do so, it is not in default of any arbitration agreement it may have with Downing. Absent such default, arbitration cannot be compelled under Section 4." (Emphasis added and ellipses in original.)

Bega has not commenced litigation or been ordered to mediate and refused to do so. Kraft therefore is not aggrieved within the meaning of FAA § 4.

In PaineWebber, Inc. v. Faragalli, 61 F.3d 1063, 1067 (3d Cir. 1995) – a case that the Second Circuit cited with approval in LAIF X SPRL v. Axtel, S.A. de C.V., 390 F.3d 194, 198 (2d Cir. 2004) – the court explained that "unless and until an adverse party has refused to arbitrate a dispute putatively governed by a contractual arbitration clause, no breach of contract has occurred, no dispute over whether to arbitrate has arisen, and no harm has befallen the petitioner – hence, the petitioner cannot claim to be 'aggrieved' under the FAA."

To establish a refusal to mediate or arbitrate, there must be a clear demand and an unambiguous refusal. For example, in AES Gener, S.A. v. Compania Carbones del Cesar, S.A., 2009 U.S. Dist. LEXIS 70820, *6 (S.D.N.Y. Aug. 12, 2009), the court denied a petition to compel arbitration because it found "the parties' correspondence contained neither a clear demand to arbitrate the dispute nor an unambiguous refusal." (Emphasis added.) It explained that the petitioner's "December 1 Letter merely advised CCC that it would compel arbitration if the parties did not resolve their dispute. CCC has never refused to arbitrate. Nor has it commenced litigation or been ordered to arbitration." Id., *7 (emphasis added). Accord SH Tankers Ltd. v. Koch Shipping Inc., 2012 U.S. Dist. LEXIS 85729, *9 (S.D.N.Y. June 19, 2012)

("KSI has not refused to arbitrate within the meaning of Section 4 – it neither commenced litigation in lieu of arbitration nor refused to comply with a Panel order to arbitrate"); N. Am. Tech. Servs. v. RAE Sys. Eur. APS, 2009 U.S. Dist. LEXIS 120765, *3-4 (D. Conn. Dec. 29, 2009) ("Typically, a party has refused to arbitrate by an unequivocal refusal to arbitrate, by commencing litigation on an arbitrable issue, or by refusing an order from a valid authority which directs the parties to arbitrate. . . . The failure of RAE to immediately agree to a request to arbitrate within one business day does not amount to a refusal to arbitrate") (emphasis added); Empresa Generadora de Electricidad ITABO, S.A. v. Corporacion Dominicana de Empresas Electricas Estatales, 2005 U.S. Dist. LEXIS 14712, *22 (S.D.N.Y. July 18, 2005) (petition to compel arbitration can be maintained "only when the respondent unequivocally refuses to arbitrate, either by failing to comply with an arbitration demand or by otherwise unambiguously manifesting an intention not to arbitrate the subject matter of the dispute") (emphasis added and internal quotation marks omitted).

Kraft did not make a clear demand to mediate; it simply sent a letter stating "we propose that we attempt to resolve the dispute by mediation" and promised that it "will shortly advise you of our selection." (Hudson Decl. Ex. C ¶¶ 16-17.) After making this proposal, it did not follow up with a request to appoint a mediator, and no mediation was scheduled.[5]

---

[5]  Kraft did not need Bega's consent to initiate mediation by proposing potential mediators.

There may be a simple explanation for Kraft's failure to start the mediation process before it filed its Petition: it knew an application for the appointment of a mediator made less than 45 days after it first provided Bega with a Notice of Dispute would have been improper under Section 7.2 of the Agreement. Even if Kraft could properly have sought the appointment of a mediator prior to November 20 at the earliest, the fact remains that it did not. Kraft therefore cannot have been aggrieved by Bega's refusal to mediate because no mediation had been scheduled in which Bega refused to participate.

Nor did Bega unambiguously and unequivocally refuse to comply with an order requiring it to appear for mediation. It could not have done so because no such order was ever issued. See Profeta v. Shandell, Blitz, Blitz & Ashley, LLP, 2015 U.S. Dist. LEXIS 154620, *7 (S.D.N.Y. Nov. 16, 2015) ("SBBA told Profeta in 2009 that his understanding of the contract terms was 'incorrect' and in 2012 that his attempts to enforce the contract were 'Machiavellian.' These bare allegations are hardly the 'positive and unequivocal' declarations of 'an intention not to perform' required to show an anticipatory repudiation of the contract"). Bega's Australian counsel's response to Kraft's Notice of Dispute was similar to the communications that the Court in Profeta held were insufficient to establish a positive and unequivocal refusal to perform. While Bega's Australian counsel took issue with Kraft's understanding of the Agreement and asked how Bega could be affected by a purported notice given to Mondelez, he did not state positively and unequivocally that Bega did not intend to perform.

Bega has, moreover, indicated that it is willing to comply with the dispute resolution procedures in the Agreement. (Ex. 1.) Where a party expresses willingness to comply with an agreement's dispute resolution provision, no controversy exists under FAA § 4 and an order compelling mediation or arbitration is unnecessary. Hartford Accident & Indem. Co. v. Equitas Reinsurance Ltd., 200 F. Supp. 2d 102, 108 (D. Conn. 2002) ("Requiring a petitioner to allege that the adverse party has actually failed, neglected, or refused to arbitrate assures the court that there is, in fact, a dispute concerning whether the parties should arbitrate. If the adverse party has not refused to arbitrate, or will agree to arbitrate, there is no reason for court involvement in the first place") (emphasis added).

A party's reservation of its right to challenge arbitrability does not constitute a refusal to arbitrate. Empresa, supra, 2005 U.S. Dist. LEXIS 14712, *22 ("A challenge to arbitrability does

-10-

not constitute a refusal to arbitrate on the part of respondents") (internal quotation marks omitted).

By filing its Petition without first seeking to negotiate with Bega or thereafter proposing a mediator, it is Kraft – not Bega – who failed to comply with the Agreement. Where a contract contains a dispute resolution provision like the one in the Agreement requiring an informal attempt to resolve the dispute before mediation or arbitration can be requested, a party cannot claim to be aggrieved by the other party's failure or refusal to mediate unless it has itself complied with the dispute resolution procedure specified in the agreement. See Howsam v. Dean Witter Reynolds, 537 U.S. 79, 83, 123 S. Ct. 588, 591 (2002) ("'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit'") (citation omitted).

In Maskaev v. World Boxing Council, 2007 U.S. Dist. LEXIS 72718, *11 (S.D.N.Y. Sept. 24, 2007), the parties' agreement required that they first submit disputes to the World Boxing Council's president for resolution. If the dispute was not resolved by the Council's president, the parties were to proceed to non-binding mediation and, if that, too, failed, they could seek arbitration. One of the parties nevertheless petitioned to compel arbitration before mediation had been sought, and the court held it was not an aggrieved party and could not seek relief under FAA § 4 (2007 U.S. Dist. LEXIS 72718, *11-12):

> The Parties have so far attempted to settle their disputes informally and have not yet sought non-binding mediation under Rule 5.3. For that reason, <u>it remains to be seen whether any Party will reject arbitration of the claims Plaintiffs raise</u> . . . . It is thus premature for the Court to consider a motion to compel arbitration since the FAA provides that such an order shall only issue upon petition of "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" . . . .

(Emphasis added.)

Accord Nico Constr. Co. v. Installux Co., 1989 U.S. Dist. LEXIS 14247, *5 (S.D.N.Y. Nov. 30,

-11-

1989) ("an order compelling arbitration under § 4 of the Federal Arbitration Act or its state statutory counterpart would be premature. <u>Defendant has not yet demonstrated a failure or refusal to arbitrate in accordance with the contract</u>") (emphasis added).

Because Kraft is not an aggrieved party within the meaning of FAA § 4, it lacks standing to bring this proceeding whether or not a valid agreement to arbitrate exists. Kraft has taken the position that this Court still has to decide "whether the dispute is subject to the arbitration provision at issue." (December 1, 2017 Transcript at 6:18-20.) But, if the Court finds that Kraft has not been aggrieved, no justiciable controversy will exist and no further finding will be appropriate or necessary. <u>PaineWebber</u>, <u>supra</u>, 61 F.3d at 1067 ("it is doubtful that a petition to compel arbitration filed before the 'adverse' party has refused arbitration would present an Article III court with a justiciable case or controversy in the first instance").

In any event, Kraft is mistaken that the Court – and not the arbitrators – should determine the issue of arbitrability here. As this Court pointed out in <u>Pincaro</u> v. <u>Glassdoor, Inc.</u>, 2017 U.S. Dist. LEXIS 147517, *18 (S.D.N.Y. Sept. 12, 2017):

> The Second Circuit has held that where, as here, <u>a broad arbitration provision incorporates the AAA Arbitration Rules, the arbitrator and not the courts must decide the threshold issue of arbitrability</u>. In *Contec*, the parties agreed to an arbitration provision similar to that at issue in this case, stating that "any controversy arising with respect to this Agreement" would be determined by an arbitrator "in accordance with the Commercial Arbitration Rules of the [AAA] . . . ." The Second Circuit concluded that "when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."

(Emphasis added and citations omitted.)

<u>Accord</u> <u>Republic of Ecuador</u> v. <u>Chevron Corp.</u>, 638 F.3d 384, 393 (2d Cir. 2011) ("By signing the BIT ([bilateral investment treaty], Ecuador agreed to resolve investment disputes through arbitration under the UNCITRAL rules. Article 21 of those rules states that the arbitrator 'shall

have the power to rule on objections that it has no jurisdiction, including any objections with respect to the existence of validity of the . . . arbitration agreement.' Therefore, Ecuador consented to sending challenges to the 'validity' of the arbitration agreement to the arbitral panel") (ellipses in original); Contec Corp. v. Remote Solution Co., 398 F.3d 205, 208-209 (2d Cir. 2005) ("arbitration of the issue of arbitrability is appropriate" because the parties incorporated AAA Commercial Arbitration Rule 7 in their agreement, giving the arbitrator the power "to decide issues of arbitrability").

The AAA Rule that applied in Contec is essentially the same as Rule 19 of the ICDR International Arbitration Rules, which applies in this case. The court stated that Rule 7 of the AAA Commercial Rules provides that "'the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.'" Contec, supra, 398 F.3d at 208. Similarly, Rule 19 of the ICDR Rules states: "The arbitral tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement(s) . . . ."

It will therefore be up to the arbitration panel in this proceeding to determine issues of arbitrability.

Because Kraft is not aggrieved and because the issue of arbitrability is therefore academic and, in any event, for the arbitration panel to decide, the Petition should be denied in all respects.

## CONCLUSION

For the reasons set forth above, it is respectfully submitted that Kraft's Petition to Compel Mediation and Arbitration should be denied on the grounds that Kraft is not an aggrieved party, and therefore lacks standing under FAA § 4, because Bega has not refused, and is not refusing, to comply with the dispute resolution procedure of the Agreement.

Dated: New York, NY
       December 8, 2017

DUANE MORRIS LLP

By: *Fran M. Jacobs*
Fran M. Jacobs
Cindy Yang
fmjacobs@duanemorris.com
cyang@duanemorris.com
1540 Broadway
New York, NY 10036
(212) 692-1000
Attorneys for Respondent Bega Cheese Limited