NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
TAIWAN
BOSTON
HOUSTON
AUSTIN
HANOI
HO CHI MINH CITY

# DuaneMorris®

FIRM and AFFILIATE OFFICES

FRAN M. JACOBS
DIRECT DIAL: +1 212 692 1060
PERSONAL FAX: +1 212 202 6413
E-MAIL: FMJacobs@duanemorris.com

www.duanemorris.com

SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN
A GCC REPRESENTATIVE OFFICE
OF DUANE MORRIS

ALLIANCES IN MEXICO
AND SRI LANKA

May 7, 2018

VIA ECF and BY HAND

Honorable Edgardo Ramos
United States District Judge for the Southern District of New York
c/o Court Security Officers
500 Pearl Street – Worth Street Entrance
New York, NY 10007

    Re:    Kraft Foods Group Brands LLC v. Bega Cheese Limited (1:17-cv-8104)(ER)

Dear Judge Ramos:

    I am writing on behalf of respondent Bega Cheese Limited to supplement my April 25, 2018 report on the status of the proceedings in Australia.

    On May 4, 2018, the Federal Court of Australia issued the attached order restraining petitioner Kraft Foods Group Brand LLC ("KFGB"), pending the determination of the Australian proceeding, from taking any step, directly or indirectly, in the arbitration proceedings commenced on February 13, 2018 before the International Centre for Dispute Resolution, Case No. 01-18-0000-7749, including any step to obtain emergency relief in the arbitration.

Respectfully,

*Fran M. Jacobs*
Fran M. Jacobs

Encl.
cc:    Paul Weiss Rifkind Wharton & Garrison LLP (via ECF)

DUANE MORRIS LLP

1540 BROADWAY   NEW YORK, NY 10036-4086    PHONE: +1 212 692 1000   FAX: +1 212 692 1020
DM1\8690314.1

# FEDERAL COURT OF AUSTRALIA

## Kraft Foods Group Brands LLC v Bega Cheese Limited (No 2) [2018] FCA 549

| | |
|---|---|
| File number(s): | VID 1220 of 2017 |
| Judge(s): | **O'CALLAGHAN J** |
| Date of judgment: | 4 May 2018 |
| Catchwords: | **ARBITRATION** – International arbitration – successful application for anti-arbitration injunction restraining the taking of any further steps in an arbitration commenced before the International Centre for Dispute Resolution in New York – appropriate scope of interlocutory injunction in light of earlier reasons |
| | **COSTS** – whether party successful in obtaining interlocutory relief entitled to its costs of the application |
| Cases cited: | *Cardile v LED Builders Pty Ltd* (1999) 198 CLR 380 |
| | *Firebird Global Master Fund II Ltd v Republic of Nauru (No 2)* (2015) 90 ALJR 270; [2015] HCA 53 |
| | *Jackson v Sterling Industries Limited* (1987) 162 CLR 612 |
| | *Les Laboratoires Servier v Apotex Pty Ltd* (2016) 247 FCR 61 |
| | *Mok v Minister for Immigration, Local Government and Ethnic Affairs (No 2)* (1993) 47 FCR 81 |
| Date of hearing: | 2 May 2018 |
| Registry: | Victoria |
| Division: | General Division |
| National Practice Area: | Commercial and Corporations |
| Sub-area: | Regulator and Consumer Protection |
| Category: | Catchwords |
| Number of paragraphs: | 24 |
| Counsel for the Applicants: | Mr D J Batt QC and Mr I P Horak |
| Solicitor for the Second Applicants: | Spruson & Ferguson Lawyers |

Counsel for the Respondent:   Dr A S Bell SC and Mr C Smith

Solicitor for the Respondent:   Addisons Lawyers

Case 1:17-cv-08104-ER   Document 30   Filed 05/07/18   Page 3 of 10

# ORDERS

VID 1220 of 2017

| | |
|---|---|
| BETWEEN: | **KRAFT FOODS GROUP BRANDS LLC**<br>First Applicant |
| | **H.J. HEINZ COMPANY AUSTRALIA LIMITED**<br>Second Applicant |
| AND: | **BEGA CHEESE LIMITED**<br>Respondent |
| JUDGE: | O'CALLAGHAN J |
| DATE OF ORDER: | 4 MAY 2018 |

**THE COURT ORDERS THAT:**

1. The first applicant be restrained, pending the determination of this proceeding, from taking any step, directly or indirectly, in arbitration proceedings commenced before the International Centre for Dispute Resolution, New York, on 13 February 2018 having Case Number: 01-18-0000-7749 (the **arbitration**), including any step to obtain emergency relief in that arbitration.

2. The applicants pay the respondent's costs of and associated with the respondent's interlocutory application dated 15 February 2018.

3. Paragraph 3 of the orders made in the proceeding on 16 February 2018 is set aside.

4. The Case Management Conference be adjourned to 10 May 2018 at 9:30am in Sydney.

Note: Entry of orders is dealt with in Rule 39.32 of the *Federal Court Rules 2011*.

# REASONS FOR JUDGMENT

**O'CALLAGHAN J:**

### Introduction

1   In *Kraft Foods Group Brands LLC v Bega Cheese Limited* [2018] FCA 549 (***Kraft No 1***), I reserved for further argument the question of the form of relief to be granted in light of my reasons and the question of costs.

### Terms of injunction

2   The first applicant, Kraft Foods Group Brands LLC (**Kraft**), submits that the injunction should be in these terms: "For as long as the applicants' claim in the proceeding is pending and not determined, the applicants be restrained from taking any step either directly or indirectly in arbitration proceedings commenced before the International Centre for Dispute Resolution, New York, on 13 February 2018 having Case Number: 01-18-0000-7749, including any step to obtain emergency relief in that arbitration".

3   Kraft submits that it should be enjoined from pursuing the arbitration only for so long as its own claim in the proceeding remains on foot. Kraft contends that the cross-claim of the respondent, Bega Cheese Limited (**Bega**) is "a matter for Bega" and that the pendency of the cross-claim cannot be the basis for a restraint against Kraft. In support of that contention, Kraft submitted that it is significant because, to quote senior counsel, "if the price of our claim ... is a stay of the arbitration, then I foreshadow that Kraft may well instruct that it would seek to discontinue that claim ... if the advertising claim has the effect that there's to be that restraint then Kraft may well proceed in that fashion ... If our claim is determined or discontinued, then we submit that there could be no basis for Kraft to be precluded from pursuing its arbitration".

4   Senior counsel for Kraft further submitted that "[it cannot be right] that by dint of choices that Bega makes within its own control whether to commence a proceeding, how to plead it, that our client as a result is to be restrained".

5   Bega disagrees. It says that the injunction should be granted in these terms: "The first applicant be restrained, pending the determination of this proceeding, from taking any step, directly or indirectly, in arbitration proceedings commenced before the International Centre

for Dispute Resolution, New York, on 13 February 2018 having Case Number: 01-18-0000-7749 ... including any step to obtain emergency relief in that arbitration".

6    In granting interlocutory injunctive relief, a court should generally grant the minimum relief necessary to do justice between the parties: *Cardile v LED Builders Pty Ltd* (1999) 198 CLR 380 at 409 (per Gaudron, McHugh, Gummow and Callinan JJ). As Deane J also said in *Jackson v Sterling Industries Limited* (1987) 162 CLR 612 at 622:

> Section 23 of the *Federal Court of Australia Act 1976* (Cth) confers upon the Federal Court a broad power to make orders of such kinds, including interlocutory orders, as it "thinks appropriate". Wide though that power is, it is subject to both jurisdictional and other limits. It exists only "in relation to matters" in respect of which jurisdiction has been conferred upon the Federal Court. Even in relation to such matters, the power is restricted to the making of the "kinds" of order, whether final or interlocutory, which are capable of properly being seen as "appropriate" to be made by the Federal Court in the exercise of its jurisdiction.

7    Kraft submits that the reasons in *Kraft No 1* "are framed in terms of the claim, the defence and the reply – not the cross-claim". Kraft submitted that "whilst the court might have entertained and adverted to the cross-claim, there are not findings as to its overlap and subject matter that would require the court now to extend the scope of the injunction ..."

8    Kraft further submitted that, in any event, the cross-claim does not implicate the trade dress dispute because the press release which forms the basis of the cross-claim does not mention the trade dress, and does not depend on how the peanut butter is presented because it has nothing to do with packaging or get-up. Kraft says that the cross-claim has to do with "the taste of peanut butter", not the trade dress. It submits, therefore, that there is no risk of inconsistent findings if Kraft were given leave to discontinue its claim and Bega prosecuted its cross-claim.

9    I do not accept those submissions.

10    In my view, the form of order sought by Bega conforms to the reasoning in *Kraft No 1*, and does no more or less than provide the minimum relief to do justice between the parties. In [69] and [109] of the reasons in *Kraft No 1*, I said:

> [69] In assessing whether, and if so, to what extent, the issues in the two proceedings overlap, the scope of the relevant issues necessarily includes all the issues raised by the parties, including by Bega in its defence and counterclaim, and by Kraft in its statement of claim, reply and defence to counterclaim ...
>
> [109] In my view, for the reasons explained above, Kraft ought to have included the claims made in this proceeding under the Australian Consumer Law in its notice of arbitration because those claims, contrary to Kraft's submission, do fall within the

- 3 -

ambit of the arbitration clause in the master agreement. Instead, Kraft chose to initiate this proceeding, and then to prosecute it, including by filing a statement of claim and a reply to Bega's defence, participating in procedural directions, seeking discovery, filing a notice to produce, consenting to the filing by Bega of a counterclaim (in which the issue of ownership of the trade dress issue is squarely raised) and then filing a defence to that counterclaim. As Bega submitted, Kraft is the party responsible for the bringing of both proceedings. It alone is the author of the possibility or probability of duplicated litigation and inconsistent findings. Each of those considerations also weighs significantly in favour of restraining the arbitration, at least until this proceeding is determined.

11   The reasons in *Kraft No 1* also include the conclusion (at [73]), viz:

> The pleadings exchanged by the parties in this proceeding make it sufficiently clear that a central issue to be determined at trial is the ownership of the goodwill in the "packaging and get-up" (as it is referred to in the pleadings in this proceeding) or the "trade dress" (as the packaging and get-up is referred to in the notice of arbitration). That question, on the pleadings, in turn depends upon whether all the goodwill at all times emanated, and continues to emanate, from the master agreement, and thus belongs to Kraft, as it contends (see, in particular, Kraft's reply at 10(c)), or whether, at least since October 2012, by reason of the various matters pleaded by Bega in its defence, including in particular paragraphs [28], [30], [34], [38] and [39], Kraft does not own any of the goodwill in Australia generated in respect of the sale of peanut butter in Australia since 2012, including "sales made by reference to the packaging and get-up, including the yellow lid, clear container, and predominantly yellow label" (see, for example, Bega's defence at [40]).

12   It follows, as those reasons reveal, that the risk of inconsistent findings arises "on the pleadings", which includes, as the reasons also make clear, the cross-claim and Kraft's defence to it.

13   So much is, in any event, apparent from the content of the cross-claim and Kraft's defence to it. Bega's cross-claim, which appears at page 66 in Schedule A of the *Kraft No 1* reasons, expressly incorporates paragraphs [24]-[40] of Bega's defence to Kraft's amended statement of claim which, it will be recalled, are among the critical paragraphs considered at [73]-[75] in reaching the conclusion (at [79]) that:

> ...the question of the ownership of the packaging, get-up (trade dress) is, on the pleadings in this proceeding, central to the question of whether all, or some, of the pleaded representations are false or misleading within the meaning of s 18 of the Australian Consumer Law. That question is also the central issue raised in the notice of arbitration. For those reasons, if both the arbitration and this proceeding run there will, in my view, be a real risk of inconsistent findings on the critical question of who owns the goodwill in the packaging/get-up/trade dress...

14   It is apparent from Kraft's defence to those paragraphs incorporated by reference that the incorporated paragraphs will be in issue on the hearing of the cross-claim. Paragraph [4] of Kraft's defence to cross-claim (at p 69 of the *Kraft No 1* reasons) pleads: "As to paragraph 4, they do not plead to this paragraph as it does not raise an allegation against them. They

- 4 -

otherwise refer to paragraphs 4 to 21 of the Reply to Defence dated 12 December 2017". It is sufficiently clear, by "otherwise referring" to its Reply to Defence, that Kraft intends to rely on those stipulated paragraphs, which expressly raise issues to do with get-up/trade dress, in defending the cross-claim.

15   Further, the particulars of loss and damage in Bega's cross-claim include a claim for "[d]iminution in the value of the goodwill associated with its peanut butter products".

16   For those additional reasons (additional, that is, to the reasons in *Kraft No 1*), on the face of the pleadings in the cross-claim, there is a risk of inconsistent findings on the question of goodwill and get-up/trade dress.

17   Accordingly, I am of the view that the form of injunctive relief should, consistently with my reasons, restrain the arbitration pending the hearing and determination of both the claim and cross-claim in this proceeding.

18   Considerable time was devoted in argument to the implications of the possibility, raised by Kraft, that it might discontinue its proceeding against Bega. The submissions made in that respect were, however, a distraction from the critical question of what relief is appropriate. In any event, the anti-arbitration injunction is an interlocutory order. If circumstances change, Kraft can take whatever action it may be advised to take.

**Costs**

19   Kraft submitted that the costs of the application should be reserved because "[t]he judgment relates to complex procedural issues, the shape of which may develop and become clearer over time". It was further submitted that, because Kraft succeeded on the question of waiver that is "a matter of significance and potentially ongoing significance, so preserving the costs would enable the true significance of Bega's success to be identified and taken into account". In the alternative, Kraft submitted that an order should be made that Bega recover only two thirds of its costs because Kraft succeeded on the discrete and significant question of waiver.

20   Bega submitted that there was no reason that the ordinary rule that the costs should follow the event should not apply, in circumstances where the application (although one for an interlocutory injunction) was one that involved the resolution of matters that will not be revisited on the hearing of the main proceedings.

21  Bega relied on *Firebird Global Master Fund II Ltd v Republic of Nauru (No 2)* (2015) 90 ALJR 270; [2015] HCA 53 at [6] and *Les Laboratoires Servier v Apotex Pty Ltd* (2016) 247 FCR 61 in relation to Kraft's alternative submission that Bega should only get two-thirds of its costs of the application. In the latter case, the Court (Bennett, Besanko and Beach JJ) said at [297], [298] and [303]:

> 297. There are two general approaches to the award of costs that have general application and have been the subject of numerous decisions:
>
>> (1) The successful party is generally entitled to its costs. That is, costs usually follow the event.
>>
>> (2) It is also the case that a successful party may be awarded less than its costs, or there may be an order apportioning costs, on the basis of success on the issues.
>
> 298. This has been recently reiterated by the High Court (per French CJ, Kiefel, Nettle and Gordon JJ) in *Firebird Global Master Fund II Ltd v Republic of Nauru (No 2)* [2015] HCA 53; (2015) 90 ALJR 270 at [6], where their Honours observed that if the event of success cannot be seen as contestable, having regard to how separate issues have been determined, then:
>
>> 'There are no special circumstances to warrant a departure from the general rule, and good reasons not to encourage applications regarding costs on an issue-by-issue basis, involving apportionments based on degrees of difficulty of issues, time taken to argue them and the like.'
>
> …
>
> 303. Without amounting to an absolute rule, the principle remains that, subject to certain limited exceptions generally linked to the disentitling conduct of the successful party, a successful party in litigation is entitled to an award of costs … That is not to punish the unsuccessful party but to compensate the successful party. There is no absolute rule that, in the absence of disentitling conduct, a successful party is to be compensated by the unsuccessful party, nor is there a rule that there is no jurisdiction to order a successful party to bear the costs of the unsuccessful party. However, the Courts have been slow to order a successful party to pay the costs where it has been unsuccessful on some issues. In *Mok v Minister for Immigration, Local Government and Ethnic Affairs (No 2)* (1993) 47 FCR 81, Keely J was of the view (at 84) that, without attempting to fetter the discretion, this power ought to be exercised only where the Court, on a consideration of all of the circumstances, has concluded that the raising of an issue by the applicant on which it has failed was so unreasonable that it is fair and just to make the order.
>
> (Citations omitted).

22  In the circumstances of this case, to adopt the language of Keely J in *Mok v Minister for Immigration, Local Government and Ethnic Affairs (No 2)* (1993) 47 FCR 81 at 84, there are no circumstances which would permit the court to find that the raising of the waiver issue by Bega, on which it has failed, was so unreasonable that it would fair and just to make an order other than the usual order that costs follow the event.

- 6 -

23  Accordingly, I propose to order that:

(1) The first applicant be restrained, pending the determination of this proceeding, from taking any step, directly or indirectly, in arbitration proceedings commenced before the International Centre for Dispute Resolution, New York, on 13 February 2018 having Case Number: 01-18-0000-7749, including any step to obtain emergency relief in that arbitration.

(2) The applicants pay the respondents costs of and associated with the respondent's interlocutory application dated 15 February 2018.

24  I will hear the parties about what directions should be made to bring this proceeding on for trial at the Case Management Conference, which will be adjourned to 10 May 2018 at 9:30am in Sydney.

I certify that the preceding twenty-four (24) numbered paragraphs are a true copy of the Reasons for Judgment herein of the Honourable Justice O'Callaghan.

Associate:

Dated:    4 May 2018